Your Honor, we believe that this is a case where the District Court improperly granted a motion to compel because of clear procedural and substantive unconscionability. The substantive unconscionability issues regard to a strict one-year statute of limitations from date of knowledge of the incident. Thus, it's an accrual statute of limitations which is Circuit City v. Mantor. We also believe that another provision that's substantively unconscionable is their confidentiality slash gag provision, which does not allow a person in arbitration or in mediation to discuss anything, basically, with coworkers. It restricts discovery. And we feel that the previous precedent of Ting v. AT&T, which was actually a narrower restrictive or confidentiality provision, the O'MELVENEY provision is even broader. We go back to the limitations period, which seems complicated. My understanding of California law, which is what's relevant here, is that, in general, statute of limitations can be altered as long as the alteration is to a reasonable provision. Then we have these two cases in the Ninth Circuit which seem to say otherwise. Now, how would you distinguish those two cases from the run of cases and explain why this one fits within them? Your Honor, a couple of issues. The continuing violation doctrine, which was the issues involved in Ingle v. Circuit City and Circuit City v. Mantor, allow for people to basically like, in this case, this is one of the aspects here is a wage and hour issue, which means that if you knew you were missing lunches or missing overtime three, four years ago, you basically, if you didn't bring it within that one year of knowledge, you've lost it, which is different from a statute of limitations provision that says you bring it within a year of being let go or a year of when you initiate the claim, for instance, if you're let go. Because in that instance, you could still reach back or even six months. If O'Malvey said — Well, there — I mean, the recent case law in continuing violations has narrowed the notion as to how far back you can go. But if there's a difference, it seems to me to be that this provision is trying not to be an occurrence or an incident accrual, but an accrual based on situations or conditions so that if you miss — if there's a policy that says you're always — you always have to work through lunch, once you once work through lunch, it appears that you have to bring it within a year rather than being able to bring it later and limit the time period that's covered by the damages. Is that essentially what you're saying? Well — In other words, it's not that you could go back under most legal regimes now four years back, but it's that you could go back as far as the limitations period goes. I'm not sure if I understand. Perhaps I could explain it this way. Plaintiff Davis worked at O'Malvey for four years prior to this arbitration provision rolling out. She is then presented with this option of either quitting or abiding by it. If she were to abide by it, how could she go back immediately? How could she go back for her previous wage claims? Well, obviously, if you want to apply it — Yeah. That's a — to me, that's a red herring. Let's take it as a going forward proposition. I mean, obviously, they can't apply it and say you should have known four years ago that we were going to divine this agreement. So that — I don't think — let's hope they wouldn't come and argue that. Okay? Well, we sent a number of letters to them asking them about this issue, and they never agreed to abide by it. Well, let's just take it in terms of — the real question is — there's two levels of questions here. One, is this what they characterize as just a pure notice provision, or is it a statute of limitations? And if it's the latter, the second part is, we have — They appear to characterize it — Do you want to let me finish? Sure. Yeah. We have two conflicting lines. One, the Ingle case, and then there's the Soltani case. And Soltani suggested that if it were even a statute of limitations, that six months would be acceptable. So maybe you can kind of tie that up and give us your position on that. Well, if you look at their excerpts of record, and O'Malveny on page — O'Malveny's excerpts of record on page 19, it says it must be served within one year of the date the claim arose. We feel that this is — actually falls within Ingle v. Circuit City and Circuit City remand tour, that it does invoke the continuing violation issues that were raised there, which is, to me, distinguishable from a six-month or a three-month or a one-year issue that was raised in Soltani. And I'm not sure if I can explain it further. Is there a distinction between a notice provision and a statute of limitations provision? I don't quite understand what the distinction is. O'Malveny seems to classify it as a notice provision, but you lose your claims if you don't give notice. So they're sort of having it both ways, blurring the distinction between a notice provision and a statute of limitations. They say it's notice in a number of areas, but then they also say, in bold, you lose your claims if you don't bring it within a year. So at the very least, it's ambiguous what they're doing. So thus, we would argue it still falls within Ingle and Circuit City remand tour. Now, this is a more generic question, but rising out of this. In this instance, is there a statute of limitations problem? Did she give notice within the requisite time period? Well, if we argue that Circuit City would — I mean, that O'Malveny would apply it the way I initially was arguing, I think certainly that would be. Because what's her — what's her claim and her timing? Well, we — Because they would go back before the time — that's not going to happen. Okay. So leaving that aside, is there, in fact, a limitations period problem here? Well, there is now, because she also had a California Family Rights Act claim, which has a one-year statute of limitations, which she — this was approximately — I can't remember the dates, but she was let go, I believe, in the summer of 2004, and her — her claim arose in approximately 2003, November, December. We were negotiating with Circuit City over this — I mean, with O'Malveny. I had an appeal with Circuit City previously, Your Honor, so — and they didn't — they weren't being clear about whether this is notice, in my opinion, whether we could go back four years, and thus — But did you get a tolling agreement? I mean, so in other words, you're saying you're negotiating, and now you're unsure whether she may have lost her one-year statute. That's correct, Your Honor. But you said it was a statute of limitations — it was a one-year statute anyway, in the — in the law, correct? In the law. So it's a one-year statute in the law, it's a one-year statute under this, so what's the problem? I don't know how — how that would alter it. Well, I mean, they were — we were negotiating over this issue, so they were — I guess, perhaps, in the course of that, she would have lost it. Did she ever file a lawsuit for that claim? We did not, because we focused on the weight on our claim. So then why isn't it over? I'm — I'm trying to figure out why this matters for this case, this limitations period problem. If she's — if she didn't file the lawsuit, as she didn't file the claim, then it seems like she doesn't have a case either way, so what difference does it make whether the Well, I guess the fundamental problem is, because we focused primarily as a wage in our case, we were not certain, and certainly the language of the arbitration agreement makes it unclear about whether this is a notice or whether this is a statute of limitations provision. We were unclear about losing — and I think I point that out in our brief — about losing wage claims going back four years, which she clearly would have been doing on a rolling basis. And what would normally be the statute of limitations on a wage claim? It could be three or four years, or two to three years under the FMLA. All right, but she gave the notice. She — did she ever give, quote, a notice on the wage claim? She filed the lawsuit. Well, that's correct, but I didn't — I didn't — here's the example. I didn't contact her, or she didn't contact me until months after she was let go, which means that she's already pursuant to this — a Malvini statute of limitations losing wage claims going back four years. I'm not understanding that. Well, if they are arguing it's a one year from the date the claim arose, which is what it says — Which they have to give notice of, and she did that. Okay, let's go back. She did that. Did she do that? At some point we did. Within a year. Within a year. Within a year. And you said it went back four years. And they're saying that — Let me just finish. Let's try to understand the chronology. You gave notice. One of your claims was that some of these arose before the agreement was signed. Am I correct? That's correct. And you told them that? Yes. Okay. So now whether or not the agreement applies to those is kind of a separate question, isn't it? Well, they would argue that — I mean, it's either a yes or a no, but you disagree on that point. That's correct. Okay. I mean, the basic issue for us is this is a wage claim with two to three year statute of limitations. If after she's let go, when she contacts an attorney, we file a claim, how are we to know what their ambiguous statute of limitations provision is, especially when we contact them, try to find an answer, and are they going to say no, it actually goes back three, four years, or are they going to say no, it's from the date the claim arose, which is what it says in bold in the arbitration provision. It's what it says in bold, must be served within one year of the date claim arose. So if the claim arose, meaning years back, if you file this, they're sort of being coy about when the statute of limitations is. So we go in on a wage claim. Potentially they argue to the arbitrator that no, the statute of limitations is only one year going back because she could have known about these years ago. I mean, they could argue that. And then the arbitrator would have to decide that, which we think the arbitration provision is so ambiguous at the very least and wrong under Ingle and Mantor. But we also certainly believe there's a number of other provisions that — Now, what about Ingle seemed to — I'm focusing on this because it seems like the hardest question. Ingle seemed — and there was another case that followed Ingle, whose name I'm not remembering. Both seem to be instances in which there was a non — a facially non-symmetrical or asymmetrical arbitration provision. This one purports not to do that. It purports to cover both the company's claims and the employee's claims. Does that matter? Well, we don't think that that's true because there is a provision of a one-way right to court by O'Melveny for confidentiality and attorney-client privilege issues, which we think violates Abramson v. Juniper, Armendaris, and Ferguson v. Countrywide. Circuit City specifically reserves the right themselves to go to court. But this happens to be O'Melveny's. O'Melveny specifically reserves the right to go to court themselves on certain claims. Well, is it — are they going — do they reserve the right to go to court on anything other than what could be characterized as attorney-client privilege and confidentiality claims? Yes. Well, not on — if you — I thought you were not going to complete the confidentiality. They do it on both attorney-client privilege and — But only for injunction. Injunctive relief, et cetera. Injunctive relief only. Okay. So that — we'll have to figure out whether that's a business necessities exception. What about the other confidentiality provision, which is, I guess, could be called the gag order provision? That's correct, Your Honor. In Ting v. AT&T, the Ninth Circuit held that even a sort of a broader or a less restricted confidentiality provision was unconscionable because it allowed employers clearly — well, in that case, it was a company, but in the employer context, it's even, to me, more oppressive because employers would know all about other employees, would know about — would be able to talk to managers, supervisors, et cetera, without theoretically violating this. But the plaintiff would not have the access to that information pursuant to this confidentiality provision. So here's the next question. Suppose we thought that — just to take one — that this provision was unconscionable and maybe one other — at what point — I mean, I gather what you want, what you're looking for here ultimately, is invalidating the entire arbitration agreement, not severing off the pieces of it. And at what point does that happen? You've challenged the limitations period, the confidentiality, and the — One way right. Asymmetrically. What? Right. Exactly right. Those are the three, right? All right. Suppose we thought one of them was right. Does the whole thing go? We would believe that the circuit — I mean, O'Malvaney doesn't have a severability provision here. So we think that — and we noted that to the district court, that there is no severability which says that if certain provisions are not valid, we could sever those. This would require the court to clarify and rewrite the statute of limitations  With the arbitration agreement. Exactly, Your Honor. And to try to find out how the confidentiality provision could be reworked as valid, which is — The other alternative is — I don't think that the lack of a severability would restrict the court. It could just strike provisions, and then there it would be. And — Your Honor, the only issue — Let's say we got rid of the one-year notice just hypothetically. And we got rid of this confidentiality, you would still be upset with this agreement, correct? The reason for that is, first of all, unless everybody — this is affecting all of O'Malvaney's employees. So unless it's an order posted or — how about — Let's not worry about everybody else. Let's worry about your client right now. Right. If we got rid of the one-year notice provision so as to alleviate her concerns, and we got rid of the confidentiality, would she still have remaining complaints? Well, we've sought a claim for declarative relief to argue that it should be stricken entirely. Okay, but I'm just asking, what would be her complaints then? She just wants it gone. Is that — Well, we think it's simply — she was presented with this, either abide by it or not. And she wasn't presented with the chance of negotiating it. We believe that the courts should — and there are case law that says the courts should not rewrite an arbitration agreement. And this involves rewriting it. Well, I mean, there's a line. They seem to say that if it permeates the agreement — if the unconscionability permeates the agreement, and the unconscionability is both procedural and substantial, and if — what we have here is sort of an evolution of these agreements so that this one is nowhere near as unconscionable as the early Circuit City ones in the early cases, even if it's quite unconscionable. So you're kind of moving along. And the question is, at what point do you say, well, you know, this is — these clauses are no good, but we're just going to chop them? How do we decide that? I mean, our primary argument would be that it should be stricken altogether because the court should not rewrite the contract. But I understand that. But what I'm asking you is that the law seems to be sometimes yes and sometimes no. What's the line? Well, I mean, if — I guess there is no major quarrel if the provisions are stricken that we believe are unenforceable that — and provided that notice, because we also brought an action for declaratory relief, is given so that O'Malvaney's other — so that the entire agreement is redrafted for all of O'Malvaney's employees, that at least is a good starting point, and we certainly would agree with that. But you don't know until — if we need to decide at what juncture the permeation kicks in. It's complicated. And for that reason, it should be — we would argue it's stricken in its entirety. All right. We'll hear from Counsel for O'Malvaney. May it please the Court. Adam Koswini for Defendant Appellee O'Malvaney and Myers. I think a lot of the issues that my opposing counsel raises probably adequately discussed in the brief, but I would like to focus on two issues, if I may, starting with confidentiality, because I think it's less problematic and less complicated than maybe going to the — Are you sticking to your position about the procedural unconscionability? It seems, frankly, to be a fairly untenable position given the case law. I respectfully would disagree with that, Your Honor. I think that the FAA and loose forward and the Supreme Court's decision in Adams is very clear that you have to treat an employment arbitration contract the same way you would treat any other contract. And so looking at California law, which you have to do under the FAA, Section 2 — And doesn't Armendariz and everything else say over and over again that if it's taken, I'll leave a provision, they don't care how long you have to look at it? I am not aware, Your Honor, of a case that has specifically addressed the point that we have raised, which is under California case law, marketplace alternatives and ability — That case law, that main case law, is a 1989 case, which was a court of appeals case. Yes. Which was before Armendariz, right? That's correct, Your Honor. Before the Ninth Circuit case interpreting Armendariz. Before the two legal cases? That's all correct, but I still think that it is a valid principle of California contract law, and despite the fact that it was not an employment decision, I think that Section 2 of the FAA and Adams and the Luce-Ford decision of this court all point towards having to apply neutral contract principles in an employment arbitration contract the same way you would in any other contract. And I am not aware of a case subsequent to the Dean-Witter case, which, if you're absolutely correct, Your Honor — Which one, sorry? The Dean-Witter case, I think, is the one you're referring to, the intermediate appellate court case in California. Granted, it's an intermediate appellate court case, and it's, you know, a few years old. But to my knowledge, it's still good law. There is no case law in California. That's not an employment case? It's not an employment case. But I respectfully submit that that doesn't matter, that you have to apply contract principles. And what are we doing with Armendariz if we do this? I think even with Armendariz. I mean, I think that Armendariz lays out a very detailed structure for analyzing procedural and substantive unconscionability, but I don't think that there is anything in Armendariz that says that if you have three months from the point in which you were given the provision to discuss the provision, to decide if you want to, you know, if you want to abide by it or not abide by it, if you want to seek marketplace alternatives. Why — the cases of new hires, most of the cases deal with new hires. In employment law in general, new hires are viewed as much more flexible than people who have been in a job for a while in terms of what their actual options are, because obviously once somebody works at a place for a while, you have an investment there. In terms of seniority, in terms of benefits, in terms of promotions, in terms of — and so on. That's why discrimination law, for example, doesn't allow — usually doesn't allow bumps as a remedy, although it does allow people at the front end to jump ahead of new hires. So you seem to be taking that and flipping it and saying that although new hires are — take it or leave it propositions, this one isn't. I would suggest, Your Honor, that the ability of an employee who has three months while at the job, while being paid, no changes in work conditions, no changes in the job at all, who has three months to decide, to think about this type of provision, to talk to people as she was encouraged to do in the e-mails and in the e-mails. And give up her jobs and give up her career sick leave and give up her pension benefit sometimes because a new job, it may take a year to get one — to get pension benefits and so on. That's simply of no — never mind. I still think that that is much more an ability of a meaningful ability to — And for a new hire who could just go down the street. For a new — well, for a new hire who doesn't have a job. I mean, a new hire presumably who is looking for a job — She won't have a job either if she leaves. What I'm saying, Your Honor, is that she would have a number of months to consider that as opposed to the new hire position where, you know, somebody might not have that opportunity or that alternative. I mean, if somebody needs a paycheck and they make an application and they have an arbitration provision staring them in the face, then there's not as much of an opportunity there as it is for somebody — What if we agreed with you in principle, but we have Engle, and they say, well, even that the amount of time you have to take it or leave it doesn't really fix the problem? I mean, how do we overcome the Engle cases, which we're bound to apply? I'm not sure I agree necessarily that Engle says that. I think that it's — and perhaps Your Honor is probably more familiar with the case than I am, but I don't read Engle as suggesting that no ability — and I know that, you know, Mantor specifically talks about, you know, sort of if there's a meaningful opportunity to, you know, to consider and to reject, then that militates against a finding of procedural unpossibility. Well, then we have Ferguson v. Countrywide Credit, which also considers this discussion and says it doesn't really matter if you had an opportunity to go in with another one. You don't really look at that for procedural unconscionability. So whatever we decide has to be built around those holdings, it seems to me. And you haven't really offered us any path to resolution other than the California case involving Dean Whitter. Which I think is the most on point of all of them. And I recognize that there are a lot of cases out there, and, you know, they make fine shades of distinction. But I think, particularly considering, you know, that, again, you have to apply neutral contract principles the same way you would in any other instance, I would — That's something we're going to have to sort out. Let me ask you about some specific provisions that maybe you can illuminate. The first is the one-year provision, which you characterize as notice. It's characterized by the other side as statute of limitations. What is it? Because if you don't give the notice, then you lose the claim. Is that correct? That's correct. So is that not both a notice and a statute of limitations provision? I don't think it is, Your Honor. And if I could just take this moment to just clarify something that opposing counsel said. Opposing counsel characterized it a number of times as having to provide one year of notice from the date the claim arises. If you read the actual agreement, and I think this is on page 8 of the record, the notice must be given within one calendar year from the condition or situation providing the basis for the claim is known to the employee, which I think is very different than having to provide it within a year of the claim arising. Correct. And I just wanted to point that out because that quotation, I think, is — Okay. So what does that mean, then? Well, I think what it means is, is that when you — within one year of knowing about the claim, you have to bring — you have to give O'Melveny notice that the claim exists. But it doesn't actually say that either. It says within one year from — and I'm assuming that this was carefully chosen language because it's unusual language. With what? One calendar year from the time the condition or situation providing the basis for the claim. In other words, not the occurrence or the incident, the way — or the claim. It doesn't say that. It says the condition or situation providing the basis for the claim. So I understand that to mean that say there was a policy that said everybody has to work through their lunch hours. Once you know that policy, you have to bring the claim within a year. Is that right? I would probably submit that once it's been applied to you and your claim is — and your claim has accrued. So — so — And you have knowledge of the fact that — But ordinarily, as I understand the way a statute — an ordinary statute of limitations would work, you would have to bring a claim within one year of not having been paid for lunch hours or whatever the limitations period is. And you could go back, whatever the limitations period is. You couldn't go beyond it, but you — but the fact that you — before the limitations period were also not paid for lunch hour wouldn't make a difference. In other words, as long as there were periods within the time — times with incidents within the limitations period of not being paid for lunch hour, that would count. And my understanding is that you're trying to override that here. Is that not right? You're trying to say that — that it isn't good enough that this happened to you during the limitations period at various discrete incident times. I hope this will answer your question. And I'm going to try to answer it. I'm not sure if I'm going to be successful in addressing exactly what you asked. But — and I think it goes to what Judge McEwen had said about what sort of the difference is between a notice and a statute of limitations. A statute of limitations, as I understand it, is — measures both sort of the timeframe from within which you can bring the claim and also the damages that you can ask for because you can't go back beyond the statute of limitations. A notice provision is essentially the first half, if you will, of that statute of limitations. It is — you have to let us know that this claim exists and that you intend to bring a claim within X amount of time, where X in this case is one year from when you have knowledge of it. That's not — what it doesn't speak to and what makes it different than a statute of limitations is that it does not restrain what also I think, you know, disputes where our primary dispute with opposing counsel is, is that it does not limit your damages. Well, give me a concrete example. If I need to give you a notice within one year of knowing the condition, which is that you're not paying me during lunch hour, right? Sure. Then isn't — don't they collapse into each other? I don't think necessarily, Your Honor. Well, give me a concrete example of why it doesn't. Sure. And in the context of this agreement, which is a multi-step agreement, as you know, somebody's denied a lunch period, let's say, in January. So under this, you have to let us know by, you know, January — let's say January 1st. January 1st of the next year that, you know, that you're going to bring the claim. In — you do so in, you know, in December, let's say. The arbitration — My understanding is you can't do that. You have to within one year trigger mediation. And within six months of — 60 days of the end of mediation, you have to bring arbitration. So everything flows from that. You can't simply stop at that point. No, but you're saying that you give the notice within one year. Right. You give the notice within one year. And then you mediate. You mediate. Right. You follow the steps in the process. Okay. Which, depending on when you gave the one-year notice, could clearly take you outside the year. At that point, if it was really a statute of limitations, you would only have one year of damages when you finally get to the arbitration. But you don't. You still have as many years as you would normally have under the prevailing law, which — and I think this panel has made an excellent point earlier that, in a lot of instances, this is actually the same statute of limitations for the, you know, for the provisions that are at issue, or I should say the allegations that are at issue in the complaint from which this arises. But I think that that's the distinction. I'm having trouble, though, because if statute of limitations on something is three years, a discrimination, a sexual harassment claim, which would be covered by your agreement, is that correct? That is correct, Your Honor. Okay. So if the employee is in a situation concerned with sexual harassment and thinks, well, you know, maybe this guy will go away or this person will go away and they don't really go away and it happens again, and then say, okay, look, live and let live. I'm going to let this go. So you wait until two years because you want to kind of see how things go and say, you know, I can't take this anymore. I have to file. If I file in a year, in your view, wouldn't the person have had to tell you at the time it arose, the facts first arose, which would be two years before? And so I've lost my claim. I think that would be a two-step analysis, Your Honor, which I think addresses opposing counsel's concerns about the continuum of violation doctrine as well. The very first instance that you said where, you know, something happened and you kind of brushed it off and decided, you know, maybe I'll live and let live. But it was something terrible. Okay. Something that we all agree flat out would get the other person and the firm in trouble. Sure. That happens and notwithstanding that, you let it go for whatever reason. Something else happens and you bring a claim. Something else happens and this time, you know, straw that broke the camel's back, I'm bringing a claim. O'Melveny, here's notice. You know, I want to mediate and then I want to arbitrate. At the arbitration, I think there's nothing stopping you from articulating the same way you would in court. And remember that, you know, for a claim of discrimination, you would have had to bring something. You know, in a normal course, you would normally have had to bring something for an administrative agency far quicker than you would here, which I think speaks volumes about the unconscionability of this provision. But regardless, you know, when you give us notice on that second claim and you go to arbitrate if the mediation is unsuccessful, you would have the same ability to argue continuing violations. You know what? It's not only this one that I'm complaining of, you know, six months ago, but there was this other time that the same thing happened, you know, a year ago. And although, you know, it's not the same instance and that's outside the statute of limitations, you know, I feel that they were connected and, you know, obviously this panel knows that there's a whole body of case law around that sort of telling, you know, determining when that's the case and when it's not. Nothing in this provision stops somebody from making that argument the same way that you could make a continuing violations argument with respect to, I'm sorry, limitations. You have another claim where there's a three-year statute and you don't give notice of that claim within the one year. You've lost the claim, correct? Absolutely. So in that regard, you have shortened the statute of limitations from three to one and notice and statute of limitations collapse, which was the question I think that Judge Berzon asked. And I think that I had agreed with that. Absolutely. It always collapses because this is why I don't understand your answer, because it says you must give written notice of any claim to the firm along with a demand for mediation. So you can't wait on that. You have to do them together. Right? That's what it says. And once you do the mediation, then you have to file the arbitration within 60 days. So essentially by filing the notice, you're setting you're filing the claim. You don't have an option to file the notice and then just sit around for a while. That's not what the statute, the agreement provides for. You're off to the races at that point. I have a red light. May I answer? Yes, please do. And I want to ask for something else after that. Okay. I think that first of all, the 60 days between mediation and arbitration, I think, you know, the agreement sets that as a default. I think the agreement also contemplates that other things may happen. And I know that, you know, in the course of things, I mean, mediation usually, you know, parties will agree and mediation will go on. And I think that that could be extended by virtue. It's not helpful to say things like that. If the mediation process is not successful, the agreed party, you or the firm, must within 60 days of completion of the mediation process appeal to step four, arbitration. Now, anybody reading that would think they must do it. Otherwise, the claim will be time barred and lost forever is what it says. And you're standing up and telling us it doesn't say that. I'm saying that what I was suggesting was that I think in practice, I think the parties could vary the result of the agreement. But if the panel's not – We have to take the agreement as written because that's how it got drafted. I'd be more than happy to do that. I think there the answer is that whenever the claim for arbitration is brought, you know, whenever the notice is filed or given, whatever language you prefer, you know, that still, you know, does not affect the damages period for which you – the damages period for which you could claim, you know, relief. And I think that that's why when you asked before what the difference is, I agree with you halfway that the notice part of it is exactly the same. But it isn't functionally only as a notice is what I'm trying to say. It's functioning as the kickoff of the entire adjudication process. That's how it's functioning. You have to give a notice and then you have to do A dispute resolution system. Then you have to do B dispute resolution system. It's not simply we all go home at that point. Let me ask you briefly to address the confidentiality provision. I think the confidentiality provision, I think, first of all, this is an agreement for all of O'Melveny's offices in different states, which is why it has the, you know, unless otherwise required by law right up front. And I know that just – You're telling us we should just strike it for California. Well, I'm saying that if you're – Because it's – I mean, almost surely we have to do that. I'm saying that if the panel is uncomfortable, then the agreement certainly provides for that, separate and apart from, you know, your general ability, you know, to sever an unconscionable provision, which the Court has regardless. But I'm saying that even outside of that, the intent of this provision is only to apply where it's lawful and because different states have different requirements. But I would also suggest – I assume that we can validate the agreement for any – under any law but that of California because that's all we've got. I was – I agree with that completely. I was just expounding on why the provision is there and the phraseology it is. But regardless, the substantive portion of your question, I don't think that this violates California law. And I don't think it violates California law because there's nothing in here. I've heard a couple of references from opposing counsel to this as a gag order. And when you have a provision in here that says that you can't – you know, that the arbitration will be, you know, will be confidential but you're still allowed to talk to it, talk with anybody you need to talk with in order to bring your arbitration, you know, potential witnesses – Can I just say that? Just to help me out on – Sure. I think it's on page 14 of the record. Except as may be necessary to do a number of things, shall be treated by a confidential by the mediator without limiting the generality of the foregoing. Let me just tell you what my issue was when I read it, okay? Except as may be necessary to enter judgment. Okay, so you've got to go into the court and tell us that you did it so that's public. Or to the extent required by applicable law. I don't know what that means depending on the state. But then it says you can't tell any third party not directly involved in the mediation or arbitration. I don't think I – if I read that, I wouldn't think that somebody was directly involved in the mediation or arbitration. If they were a potential witness or I wanted to talk to them, have you ever heard any other problems about the lunch or the sexual harassment or this partner? That seems to me to not be a person who's directly involved. So that's where I got stuck. Am I misinterpreting that? Respectfully, I would suggest that the intent of the provision was not to stop somebody who has a claim in arbitration to stop them from talking to witnesses or potential witnesses. I mean, this seems to me that's a drafting – this is so precise that other than wrapping yourself up in a blanket and not talking to anybody about the arbitration, you're at a risk every time you open your mouth during – after you file your claim. And if you had said, you know, accept as necessary to – you know, accept as necessary to pursue the claim or to pursue the arbitration or mediation, then I'd say, okay, that leaves, you know, some opening there. Which is what you said when you stood up here, but where is it? Well, I – unfortunately, I imagine I have a slightly different – I have a slightly different interpretation of the language than the panel does. Not directly involved – you can divulge it to anyone – you can't divulge it to anyone, rather, to anyone not directly involved in the mediation or arbitration or the content of the pleadings. I think that if you – you know, again, let's take the case before us. If someone has an allegation about a lunch period that they weren't allowed and they want to point out the fact that other – you know, they want to call another – a co-employee to say, oh, that's right, you know, Melvaney doesn't know. But before they call them, they have to make inquiries. So suppose they send an e-mail all around their office and they say, I have a pending arbitration with Melvaney over lunch hours and I need to know if anybody else has had similar lunch hour problems because I may need those people as witnesses. I think the – I think the – That plainly would violate this provision. I'm not sure it would, Your Honor, because so long as you're contacting someone that has – that's relevant to the content of the pleadings. Well, you don't know when you're contacting them. I mean, you don't know. You're trying to find out. I mean, see, here's the problem. The content of the pleadings says, oh, Melvaney did this bad. Melvaney says, we didn't do that bad, okay? So I have to go out and say to somebody, look, you know, Melvaney says they've never actually ever done this ever before. I happen to have landed in the soup with them. And so I am now divulging the content of the pleadings because Melvaney said they never do this and I need to find out, is that really true? I can't believe it's not true. I am divulging the content of the pleadings to try to find my witness or to try to talk to a witness. So what you're saying is you think that – What I'm saying is they're not a third party. That's what I'm saying. Who are they? What I'm saying is essentially that in an instance like that, you wouldn't be divulging it to a third party who's not correct, who's not connected to the – If the person's not directly involved in the mediation or arbitration, at least until they come up with something that's – That's an odd thing because, I mean, if they're employed at O'Melvaney, they are not O'Melvaney for purposes of agent or whatever. Maybe they left O'Melvaney. No, no, no. What I'm saying is that – What's a third party? Or person? No one might divulge to any third party not directly involved in the – No, don't say that. Any third party or person not directly involved in the mediation. Well, anyway, back to the drawing boards in any event, whether – I mean, it doesn't say what you're saying it says, and that's why I'm having trouble trying to really imagine being either O'Melvaney or being – How's O'Melvaney going to go get witness from the last employer to find out that there is a problem if they can't do this? To sum up, if I may, our position is that this provision and the reference to not divulging to a third party would allow someone to go and seek witnesses to help them in the arbitration because that would not be a third party not connected with the mediation or arbitration. But failing that, I would just, again, point out that there is the savings clause at the beginning of the provision, which if the panel perceives this to be an insurmountable difficulty under California law, should, you know, solve the issue regardless. Okay. Wait a minute. Excuse me. So you're suggesting that because it says to the extent required by applicable law, if the whole thing is invalid under California law, we still don't say that you can't leave it – you could still leave it in there and give it to California people because they're supposed to know that it's all invalid under California law. Well, I think that if the panel makes that decision, then clearly the law in this case will be – But then the next person who shows up, do you hand them the same provision or not? Well, I – Or do you strike it applicable? This is getting outside the record, but if that's the interpretation that is handed down by the appellate court, then the language will be modified so that it's not a problem going forward. I see. So you're not saying that simply because it says to the extent required by applicable law, therefore, you can leave the whole thing in there because everybody is supposed to know that it's required by applicable law?  What I'm saying is, like I said, which this is essentially why I just mentioned in the beginning that this is a provision that's applicable to, you know, people in different jurisdictions with different laws. And the reason why that it's in there is because the law might be different. And to the extent – and I think that there's nothing concrete in California law right now that says that this isn't legal or lawful. But if that's the decision of the panel, then that will be the decision – that will be the law going forward. And in California, this would not be applicable. What about the Ting case? I think Ting is problematic for two reasons. One, it's – there was not much discussion there at all of any privacy concerns. And here, as discussed in the brief and – Yeah, but those privacy concerns exist in court and are taken care of in court. You make motions, as you would before an arbitrator, saying we have a privacy problem and we want you to seal this or that. But that doesn't – this is much more broad than whatever those privacy problems may be. Well, I think – and this kind of blends in with the argument regarding the – that we make in the brief regarding our obligations as a law firm. And, frankly, Ms. Davis' obligations as a paralegal as well. You know, we have obligations to, you know, keep confidential, you know, client information and things of that nature. And that can come out in all sorts of different ways in an arbitration, which is why we want – you know, partly the reason why we need them to be confidential. But, you know, to answer your question about Ting as well, I think, in all honesty, that Ting is extremely problematic after loose forward. After this panel's decision or this court's decision, loose forward. Because if you read – if you read Ting, it very explicitly says that the reason that they have a problem with the confidentiality provision is because they feel that the employer has, you know, a repeat player advantage in arbitration. And loose forward, you know, an en banc decision of the Ninth Circuit, says very clearly, no, in connection with – you know, in conjunction with Supreme Court case law, particularly the decision in Adams, says very clearly that there is no loss of substantive rights and no issue with going to arbitration of an employment case. There isn't, but there is if there is. And if this modifies substantively people's rights to investigate their case and present it, then there is. I mean, it's just a circular problem. I think which might be a slightly different issue than Ting – than Ting's effect here. But just to answer your question about Ting, I think that it's very problematic after loose forward for that reason because I think it evinces a hostility towards arbitration agreements that the en banc court in loose rejected. Thank you. Thank you very much, Ron. You're way out of time, but we've let the Melbourne East Council go over. So you may have a minute for rebuttal. I just would like to address one real basic issue is on the confidentiality provision, I think Your Honors are right. We had no idea of knowing, based on how it's drafted, who we could talk to, if we could talk to frankly anyone apart from O'Melveny's attorneys or O'Melveny, you know, or O'Melveny witnesses that they brought into the arbitration. So, frankly, we could have been in breach of the arbitration agreement and subject to who knows what sanctions by the arbitrator if we tried to talk to former O'Melveny employees, current O'Melveny employees, et cetera. The other thing, too, is with regard to the procedural unconscionability, Ms. Davis had an extremely vested interest in staying. I mean, she was at O'Melveny for four years. The issues raised about investing time at an employer is really significant to suddenly upheave yourself in three months when you don't know how to get around these various provisions that are so ambiguous anyway and we believe invalid. It's a very serious thing to present to somebody who has a career going and who's doing well in their career. Thank you. Thank you, Your Honor. The case of Davis v. O'Melveny is submitted. Thank you for your arguments this morning.
judges: Berzon, McKeown, King